**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| YF Trust, | No. CV 07-567-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| JP Morgan Chase Bank, N.A., | |
| Defendant. | |

On January 12, 2007, Plaintiff YF Trust filed a Complaint in Maricopa County Superior Court on behalf of its Trustee, Harvard Investments, alleging claims of Failure to Exercise Ordinary Care pursuant to Arizona Revised Statutes Annotated ("A.R.S.") § 47-3404(2) (Count I), and Aiding and Abetting Fraud and Breach of Fiduciary Duty (Count II) against Defendant JP Morgan Chase Bank, N.A., successor in interest to Bank One Arizona, N.A. On March 16, 2007, Defendant removed the case to the District Court. (Doc. # 1) Defendant has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief may be granted. Defendant also argues that Plaintiff's claims are barred by the applicable statutes of limitations. The Court has reviewed Defendant's Motion to Dismiss (Doc. # 4), the Response (Doc. # 6), and Reply (Doc. # 7), as well as the applicable law, and now issues its Order.

1  I.     STANDARD OF REVIEW

2         A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the
3  complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a
4  cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal
5  theory."  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  The Ninth
6  Circuit has stated that "[t]he issue is not whether a plaintiff's success on the merits is likely
7  but rather whether the claimant is entitled to proceed beyond the threshold in attempting to
8  establish his claims." De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978).  The Court
9  must determine whether or not it appears to a certainty under existing law that no relief can
10 be granted under any set of facts that might be proved in support of plaintiff's claims.  Id.

11        Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and
12 plain statement of the claim showing that the pleader is entitled to relief."  5A Charles A.
13 Wright & Arthur R. Miller, Federal Practice and Procedure, § 1356 (1990).  The notice
14 pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting
15 pleadings for failure to state a claim." Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th
16 Cir. 1997).  Therefore, a court must not dismiss a complaint for failure to state a claim unless
17 "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
18 which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also
19 U.S. v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

20 II.    BACKGROUND

21        When reviewing a motion to dismiss, the Court accepts the allegations in the
22 complaint as true and construes them in the light most favorable to the plaintiff.  Sosa v.
23 Hiraoka, 920 F.2d 1451, 1455 (9th Cir. 1990)  The following facts are alleged in Plaintiff's
24 Complaint (Doc. # 1 - 2). YF Trust is an Arizona irrevocable trust, and Harvard Investments
25 ("Harvard") is its trustee. (Id., ¶ 1)  Harvard is in the business of real estate development in
26 Arizona. (Id., ¶ 6)  Harvard formed entities (the "Project Entities") to conduct the business
27 for each of its real estate projects. (Id., ¶ 7)  The Project Entities entered into numerous
28 contracts with service vendors related to the development of the Projects. (Id., ¶ 8)

Douglas Ross Zuber was a Vice-President of Harvard. (Id., ¶ 5 ) In this capacity, Zuber's responsibilities included the management and supervision of the Projects. (Id., ¶ 9) Zuber was involved in developing budgets and selecting and contracting with vendors to provide services required in connection with the development of the Projects. (Id.) From March 1999, through January 2006, Zuber caused the Project Entities to enter into numerous contracts with Fictitious Vendors, which were created and controlled by Zuber. (Id., ¶ 11) During this same period of time, the Project Entities paid the Fictitious Vendors on invoices totaling in excess of $50,000 for work billed under the Fictitious Vendor Contracts to the Projects. (Id. , ¶ 14) The Fictitious Vendors did not provide any services to the Projects. (Id., ¶ 15) On or about January 17, 2006, Harvard learned that Zuber fabricated the Fictitious Vendor Contracts and the Fictitious Vendor's invoices paid by Harvard and the Project Entities. (Id., ¶ 16)

Harvard subsequently discovered that the payments from the Project Entities to the Fictitious Vendors were deposited in a series of at least seven accounts which Zuber opened at the Camp Verde, Arizona, branch of Bank One in the names of the Fictitious Vendors. (Id., ¶¶ 17, 21-28) Bank One representatives were aware that Zuber was an employee of Harvard, and although the accounts were opened in the names of the Fictitious Vendors, Bank One knew the accounts were opened, owned and controlled by Zuber. (Id., ¶¶ 17, 34, 35) Harvard and all, or substantially all, of the Project Entities were, at all relevant times customers at Bank One, and all, or substantially all, of the Project Entity checks paid to the Fictitious Vendors were deposited into the Fictitious Entity Bank One accounts drawn on Project Entities' bank accounts at Bank One. (Id., ¶ 18) Zuber was not authorized to sign on any Harvard bank account or any of the Project Entities' bank accounts. (Id., ¶ 10) The converted funds deposited into the Fictitious Vendor Bank One accounts were distributed to Zuber and others, including Bank One. (Id., ¶¶ 48, 57, 58)

III.   DISCUSSION

    A.   <u>Defendant's Motion to Dismiss Plaintiff's Claim for Failure to Exercise Ordinary Care (Count I)</u>

- 3 -

Plaintiff alleges in Count I that it is entitled to recover the amount lost by Harvard and the Project Entities as a result of Defendant's failure to use ordinary care under A.R.S. § 47-3404(D). (Id., ¶ 42) Defendant contends that Plaintiff's Complaint fails to state a claim "because A.R.S. §§ 47-3404(B) and (D) require that plaintiff bear the loss for the checks paid by [Defendant] that plaintiff (and its agents) made payable to allegedly fictitious entities." (Doc. # 4, p. 1)

Under A.R.S. § 47-3404(B), once a check made payable to a fictitious entity is paid, the loss is generally borne by the drawer of the check, not the depository bank that took the check for collection. Section 47-3404(B) provides in pertinent part:

> If . . . the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:
>
> * * *
>
> 2. An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

However, A.R.S. § 47-3404(D) renders a bank liable for payment of an employer's check to a fictitious payee, even though the employer's employee caused the check to be issued to the fictitious payee, if the bank fails to exercise ordinary care in paying or taking the instrument. Specifically, A.R.S. § 47-3404(D) provides as follows:

> [I]f a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

"Ordinary care" is defined in A.R.S. § 47-3103(A)(7) as the "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged."

Defendant points to Plaintiff's allegations in the Complaint that Defendant "failed to observe prevailing reasonable commercial banking standards in the formation and maintenance of the Fictitious Vendor" accounts and that Defendant "fail[ed] to exercise ordinary care with regard to the opening, maintenance and use of the Fictitious Vendor

- 4 -

1 Accounts." (Doc. 1 - 2, ¶¶ 40, 41)  Defendant argues that the definition of "ordinary care" in section 47-3103(A)(7) "relates solely to the requirements that a bank must meet in *processing* an instrument." Defendant contends that Plaintiff has not alleged lack of ordinary care by Defendant in processing the checks and thus the allegations do not shift the burden of loss to Defendant under the fictitious payee rule. Relying on two cases, one from Arizona and one from Indiana, that were subsequently vacated, Defendant further argues that "facts relating to the opening of an account are not sufficient to demonstrate that a drawee or depositary bank did not exercise ordinary care in allowing the *opening* of a bank account."

The Court does not agree with Defendant's narrow interpretation of the statutes in question. Defendant relies on the second sentence of section 47-3103(A)(7), which is limited to the duty of a bank to examine an instrument taken by the bank by automated means: "[i]n the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage . . . ." However, although this provision generally will "protect intermediary banks [and] payor banks, [it] will less frequently protect depository banks. . . . [I]t does nothing to protect a bank that deals face to face with the embezzler." 2 White & Summers, Uniform Commercial Code § 19-3 (5th ed.) (discussing § 3-103(a)(9) which has been enacted in Arizona as A.R.S. § 47-3103(A)(7)). As alleged here, Defendant, a small-town bank branch, had substantial contact with Zuber over a period of seven years.

Contrary to Defendant's argument that facts relating to the opening of an account are not sufficient to demonstrate that a depositary bank did not exercise ordinary care, a bank may be liable for failing to exercise ordinary care in opening an account, in accepting checks for deposit into an account, or in permitting withdrawal of funds from an account. 2 White & Summers, Uniform Commercial Code § 19-4 (5th ed.) "Failure to exercise ordinary care is to be determined in the context of all facts relating to the bank's conduct with respect to the bank's collection of the check." Id.

- 5 -

1 Here, the Complaint alleges that Bank One failed to exercise ordinary care or to observe reasonable commercial banking standards in the formation, maintenance and use of the Fictitious Vendor Accounts (Doc. 1 - 2, ¶¶ 40, 41); that Bank One opened at least seven accounts in a small-town branch in the names of the Fictitious Vendors knowing that the purported account holders did not legally exist (Id., ¶¶ 17-18, 20-29, 38, 52); that Bank One knew that Zuber was the owner and sole signatory to the Fictitious Vendor accounts because Zuber's social security number, and not a separate employer identification number, was used to establish the accounts (Id., ¶¶ 34, 35); and that Bank One thereafter caused or allowed the removal of any references to Zuber from the accounts. (Id., ¶ 36)

The Complaint further alleges that Bank One was also the payor and depository bank for the Project Entity checks issued to the Fictitious Vendors and that these checks were deposited in the Fictitious Vendor accounts over the course of several years, beginning in March 1999, and continuing through January 13, 2006 (Id., ¶¶ 30, 39); that said checks usually indicated that the Fictitious Vendor payee was an "Inc." or "Assoc." (Id., ¶ 37); and that Bank One and/or its representatives knew that Zuber was an employee of Harvard and owed fiduciary duties to Harvard and the Project Entities during the relevant time period (Id., ¶¶ 19, 53) Accordingly, Plaintiff's allegations set forth above, taken as true, adequately state a claim under A.R.S. § 47-3404(D).

In its Reply brief, Defendant argues for the first time that in order to bring a claim under A.R.S. § 47-3404(D), "plaintiff is required to plead a prima facie case for breach of the duty of care." Arguments raised for the first time in a reply are generally not considered because to do so may unfairly deprive the opposing party of the opportunity to make a meaningful response. See, .e.g., Pacific Coast Federation of Fisherman's Ass'n v. U.S. Bureau of Reclamation, 138 F. Supp. 2d 1228, 1248 n.17 (N.D. Cal. 2001). In any event, the Court finds that the allegations in Plaintiff's Complaint set forth a prima facie case under A.R.S. § 47-3404(D).

///

///

- 6 -

B.  <u>Defendant's Motion to Dismiss Plaintiff's Claim for Aiding and Abetting Fraud and Breach of Fiduciary Duty (Count II)</u>

In Count II of its Complaint, Plaintiff alleges that Defendant aided and abetted Zuber in committing fraud and breaching his fiduciary duty to Plaintiff. Defendant has moved to dismiss these claims for failing to meet the heightened pleading requirement under Rule 9(b) of the Federal Rules of Civil Procedure. The legal standards with respect to complaints are found in Rules 8 and 9 of the Federal Rules of Civil Procedure. Rule 8(a) requires only a short and plain statement of the claim, and this requirement is liberally construed. Rule 9(b), however, provides that allegations of fraud must be pleaded with particularity. Under Ninth Circuit law, the two rules are to be read in conjunction. Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." <u>Bosse v. Crowell Collier and Macmillan, et al.</u>, 565 F.2d 602, 611 (9th Cir. 1977). "While mere conclusory allegations of fraud will not suffice, statements of the time, place and nature of the alleged fraudulent activities will." <u>Id.</u>

In a claim for aiding and abetting a tort, a plaintiff must plead with particularity that (1) the primary tortfeasor committed a tort that caused injury to the plaintiff, (2) the defendant knew that the primary tortfeasor's conduct constituted a breach of duty; and (3) the defendant must have substantially assisted or encouraged the primary tortfeasor in the achievement of the breach. See <u>Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund</u>, 201 Ariz. 474, 485, 38 P.3d 12, 23 (2002). Under Rule 9(b), the knowledge element for aiding and abetting may be averred generally. In addition, such knowledge may be inferred from the circumstances. See <u>Wells Fargo</u>, 201 Ariz. at 485, 38 P.3d at 23. The "substantial assistance" requirement "can take many forms . . . ." <u>Id.</u> at 488. Ordinary course transactions can constitute substantial assistance "such as where there is an extraordinary economic motivation to aid in the fraud." <u>Id.</u>

Here, with respect to Plaintiff's claims of aiding and abetting fraud and breach of fiduciary duty, Plaintiff's Complaint alleges that Bank One opened at least seven accounts

- 7 -

1   in the names of the Fictitious Vendors knowing that the purported account holders did not
2   legally exist (Id., ¶¶ 17-18, 20-29, 38, 52); that Bank One knew that Zuber was the owner and
3   sole signatory to the Fictitious Vendor accounts because Zuber's social security number, and
4   not a separate employer identification number, was used to establish the accounts (Id., ¶¶ 34,
5   35); and that Bank One thereafter caused or allowed the removal of any references to Zuber
6   from the accounts. (Id., ¶ 36) The Complaint further alleges that Bank One was also the
7   payor and depository bank for the Project Entity checks issued to the Fictitious Vendors and
8   that these checks were deposited in the Fictitious Vendor accounts over the course of several
9   years, beginning in March 1999, and continuing through January 13, 2006 (Id., ¶¶ 30, 39);
10  that said checks usually indicated that the Fictitious Vendor payee was an "Inc." or "Assoc."
11  (Id., ¶ 37); and that Bank One and/or its representatives knew that Zuber was an employee
12  of Harvard and owed fiduciary duties to Harvard and the Project Entities during the relevant
13  time period (Id., ¶¶ 19, 53)

14          The Complaint also alleges that Defendant knowingly benefitted from Zuber's fraud
15  and breach of fiduciary duty, and that between August 16, 2002, and January 17, 2006,
16  Defendant received no less than $30,736.17 directly from the Fictitious Vendor Accounts in
17  satisfaction of Zuber's personal debt to Defendant. (Id., ¶¶ 57, 58) Accordingly, taking the
18  allegations set forth above as true, the Court finds that Plaintiff's Complaint sufficiently sets
19  forth the time, place and nature of the alleged fraudulent activities. Plaintiff's Complaint
20  thus satisfies requirements of Rule 9(b) in pleading aiding and abetting liability so that
21  Defendant can prepare an adequate answer from the allegations. See Bosse, 565 F.2d at 611.

22          C.      Defendant's Motion to Dismiss Plaintiff's Claims Based on the Statute of
                    Limitations
23
24          Defendant correctly states that any action to enforce an obligation, duty or right
25  arising under the fictitious payee statute must be brought within three years after the cause
    of action accrues. See A.R.S. § 47-3118(G)(3). Relying on cases from other jurisdictions,
26
    Defendant argues that "[t]he statute of limitations for claims arising under A.R.S. § 47-
27
    3404(D) began to run at the latest when [Defendant] exercised dominion over the checks."
28

1 Defendant contends that because the Complaint was not filed until January 12, 2007, nearly
2 eight years after Zuber opened the first bank account and more that six years after Zuber
3 opened the last bank account, Plaintiff's claim under the fictitious payee rule is therefore
4 barred by the statute of limitations.

5 The Court, however, is required to apply Arizona law to the case before it, and
6 Arizona courts apply the "discovery rule" to claims arising from commercial disputes. See
7 Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am., 182 Ariz. 586, 589, 898 P.2d
8 964, 967 (1995). Under the "discovery rule", "a cause of action does not accrue for
9 limitations purposes until the plaintiff knows or with reasonable diligence should know the
10 facts underlying the cause." CDT, Inc. v. Addison, Roberts, & Ludwig, C.P.A., P.C., 198
11 Ariz. 173, 176, 7 P.3d 979, 982 (App. 2000) (quoting Doe v. Roe, 191 Ariz. 313, 955 P.2d
12 951 (App. 1998)). Defendant has given no indication that Arizona courts would deviate from
13 this longstanding rule in the context of this case, and the Court finds it inappropriate to
14 deviate from it now.

15 Here, Plaintiff has alleged that it was not until January 2006 that Harvard learned that
16 Zuber fabricated the Fictitious Vendor Contracts and the Fictitious Vendor's invoices and
17 that it subsequently discovered that payments from the Project Entities were deposited in the
18 Bank One accounts at issue. (Doc. # 1 - 2, ¶¶ 16, 17) Plaintiff filed its Complaint on January
19 12, 2007, approximately one year later. Accordingly, applying the discovery rule, and taking
20 Plaintiff's allegations as true, Plaintiff's claim under A.R.S. § 47-3404(D) is timely.

21 With respect to Plaintiff's claims for aiding and abetting fraud and breach of fiduciary
22 duty, the statute of limitations is the same as for the underlying actions. A claim of fraud
23 must be made within three years after the action accrues. See A.R.S. § 543(3). A claim for
24 breach of fiduciary duty must be commenced within two years after the cause of action
25 accrues. See A.R.S. § 542; CDT, Inc., 198 Ariz. at 175, 7 P.3d at 981. An action sounding
26 in fraud accrues upon "the discovery of the aggrieved party of the facts constituting the fraud
27 or mistake." See A.R.S. § 543(3) Citing Hays v. Bank of Arizona, 57 Ariz. 8, 11, 110 P.2d
28 235, 237 (1941), Defendant argues that "[i]t is black-letter law that the knowledge of the

1  agent in regard to any business he conducts that affects his principal is imputed to the
2  principal. . . . [t]hus, any knowledge Zuber had at the time of the transactions in question is
3  imputed to Harvard." The Hays court, however, noted that this general rule of law "is
4  qualified by the exception that if in the particular transaction in question the agent had an
5  interest which is adverse to that of the principal no such imputation exists." Here, Zuber's
6  interest was adverse to his employer, Harvard, thus his knowledge at the time of the
7  transactions is not imputed to Harvard. Relying on In re American Continental
8  Corporation/Lincoln Savings and Loan Securities Litigation, 794 F. Supp. 1424 (D. Ariz.
9  1992), Defendant argues that the exception has no application here, where the failure of the
10 agent to act upon or reveal the information "injures innocent third parties." Id. at 1463.
11 Defendant, however, fails to reveal who the "innocent third party" is in this case. Taking the
12 allegations in the Complaint as true, which we must in reviewing a motion to dismiss, it is
13 certainly not the Defendant.
14     The Complaint alleges that Harvard first learned of Zuber's fraudulent activities in
15 January 2006. (Doc. # 1 - 2, ¶ 16) Plaintiff filed its Complaint on January 12, 2007,
16 approximately one year later. Accordingly, Plaintiff's claims are not barred by the applicable
17 statutes of limitations.

18 III.   CONCLUSION
19     In light of the foregoing,
20     **IT IS ORDERED** denying Defendant's Motion to Dismiss. (Doc. # 4)
21     DATED this 25th day of March, 2008.

_____
Mary H. Murguia
United States District Judge